## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

_____
:
**UNITED STATES SECURITIES AND**          :
**EXCHANGE COMMISSION,**                    :
:
**Plaintiff,**          :
:       **Civil Action No. 16-1877**
**v.**          :
:       **JURY TRIAL DEMANDED**
:
**PROVIDENCE FINANCIAL**          :
**INVESTMENTS, INC., PROVIDENCE**          :
**FIXED INCOME FUND, LLC, JEFFORY**          :
**CHURCHFIELD, JACK JARRELL,**          :
**AND  ANTHONY BUZANELI**          :
:
**Defendants.**          :
_____ :

## AMENDED COMPLAINT

Plaintiff, U.S. Securities and Exchange Commission ("SEC") alleges as follows:

## NATURE OF ACTION

1.      The SEC brings this action to halt an ongoing fraudulent and unregistered

securities offering being perpetrated by Defendants Providence Financial Investments, Inc.

("Providence Financial") and Providence Fixed Income Fund, LLC ("Providence Fund").

Since at least as early as 2011, Providence Financial and Providence Fund have raised

more than $64 million from over 400 investors throughout the United States.

2.      The securities at issue are promissory notes that purport to pay annual

returns generally ranging from 12% to 13%.  Providence Financial and Providence Fund

represented to investors that their investment proceeds would be used to fund the

"factoring" of accounts receivable in Brazil.  Contrary to these representations,

Providence Financial and Providence Fund spent, at best, less than 68% of their investors' money to finance Brazil factoring transactions, and both companies have been unable to account for how they spent the remaining investor proceeds.  One use of investor funds that was not disclosed to investors was the generous 6% annual commission that Providence Financial and Providence Fund paid to their unregistered brokers for selling the promissory notes.  Another undisclosed use of funds was the payment of millions of dollars to Providence Financial and Providence Fund insiders.

3.      In addition to misrepresenting how they would use investor funds, Providence Financial and Providence Fund have concealed from investors that the companies face serious financial difficulties.  Providence Financial and Providence Fund hold very little cash or liquid assets, and the amount of money owed to investors vastly exceeds the value of any Brazilian receivables investments held by Providence Financial and Providence Fund.  Compounding these problems is a highly unfavorable foreign exchange rate which hinders the repatriation of Brazilian assets to repay U.S investors.  As a result, the only way Providence Financial and Providence Fund are repaying their current investors is through the proceeds of new investments.

4.      Providence Financial and Providence Fund have failed to disclose any of this negative financial information to their investors.  Instead, Providence Financial and Providence Fund tout the notes as a safe and relatively low risk investment.

5.      To lure investors, Providence Financial and Providence Fund employ a team of unregistered brokers throughout the United States, and pay them the aforementioned 6% annual commission for each successful promissory note sale.  One

such unregistered broker is Defendant Jeffory Churchfield, a Forest Lake financial advisor who promoted the promissory notes to his Minnesota clients.  Another is Defendant Jack Jarrell, an investment adviser registered with the State of Washington, who assisted Churchfield in promoting the promissory notes to his Minnesota clients.

6.      In the course of the SEC's investigation, Providence Financial and Providence Fund have been unable to answer basic questions about their organizational structure, their use of investor proceeds, and their current financial condition.  These defendants have failed to produce audited or consolidated financial statements, up-to-date financial information, or a current inventory of their purported factoring investments.

7.      When the SEC sought to learn more information on these subjects by compelling the testimony of Providence Financial's and Providence Fund's CEO, Anthony Buzaneli, he asserted his 5th Amendment privilege against self-incrimination.

8.      Buzaneli controlled all aspects of the day-to-day operations of Providence Financial and Providence Fund until those entities filed for bankruptcy.

9.      While the SEC continues to investigate the promissory note offerings, it brings this action now to stop the fraudulent offer and sale of unregistered securities through unregistered brokers.  In addition to seeking temporary and preliminary relief to halt the ongoing offering and preserve investor funds, including the appointment of a receiver, the SEC seeks a permanent injunction against the defendants to enjoin them from future violations of the federal securities laws specified below.  The SEC further seeks an order requiring the defendants to pay civil penalties and disgorgement, plus prejudgment interest, on all ill-gotten gains they received.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to Section 22(a) of the

Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77v(a)], Section 27(a) of the

Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78aa(a)], Section 214 of

the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-14], and 28

U.S.C. § 1331.

11.     Venue is proper in this Court pursuant to Section 22(a) of the Securities Act

[15 U.S.C. § 77v(a)], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], Section

214 of the Advisers Act [15 U.S.C. § 80b-14], and 28 U.S.C. § 1391.

12.     Acts, practices, and courses of business constituting violations alleged in

this complaint have occurred within the jurisdiction of the United States District Court

for the District of Minnesota and elsewhere.  Providence Financial and Providence Fund

claim to have offices in Minneapolis and, through Defendant Churchfield, have offered

and sold promissory notes to Minnesota investors.

13.     Defendants, directly and indirectly, made use of the means and

instrumentalities of interstate commerce and of the mails in connection with the acts,

practices, and courses of business alleged in this complaint.  Defendants will, unless

enjoined, continue to engage in the acts, practices, and courses of business set forth in

this complaint, and acts, practices, and courses of business of similar purport and object.

## DEFENDANTS

14.     **Providence Financial Investments, Inc.** is a Delaware corporation

headquartered in Miami, Florida.  Providence Financial offers and sells unregistered

promissory notes to investors throughout the United States and purports to use the proceeds of those notes to finance transactions in the Brazilian receivables factoring market. Since at least 2011, Providence Financial, together with Providence Fund, has raised at least $64 million through the sale of unregistered promissory notes.

15. **Providence Fixed Income Fund, LLC** is a Delaware corporation headquartered in Miami, Florida. Providence Fund offers and sells unregistered promissory notes to investors throughout the United States and purports to use the proceeds of those notes to finance transactions in the Brazilian receivables factoring market. Both Providence Financial and Providence Fund are members of the Providence Companies Group ("Providence Group"). Providence Group purports to be a diversified group of companies, under common ownership by the same principals, with over 30 years of experience in financial services, receivable financing, and trade in Brazil, China, and other emerging markets.

16. **Jeffory Churchfield** is a resident of Forest Lake, Minnesota. Churchfield operates a financial advisory business that purports to assist individuals in optimizing and protecting retirement income. Churchfield has offered and sold Providence Financial and Providence Fund promissory notes to his clients since 2013. Churchfield is not registered as or affiliated with a registered broker-dealer.

17.     **Jack Jarrell** is a resident of Snohomish, Washington.  Jarrell is registered with the State of Washington as an investment adviser and has been offering and selling Providence Financial and Providence Fund promissory notes to investors since at least 2012.  Jarrell is not registered as a broker-dealer nor is he affiliated with a registered broker-dealer.

18.     **Anthony Buzaneli** is a resident of Key Biscayne, Florida.  Buzaneli is a principal and co-founder of the Providence g Group and served as the CEO of the Providence Group and was a Managing Director of Providence Financial and Providence Fund.

## STATEMENT OF FACTS

I.     **Providence Financial and Providence Fund Offer and Sell Unregistered Securities through Unregistered Brokers.**

19.     From at least as early as 2011, Providence Financial and Providence Fund have been issuing, offering to sell, and selling fixed rate promissory notes to investors in the United States and elsewhere.

20.     Generally, the notes pay annual interest rates of 12% to 13%.  Investors generally have the option of purchasing a note with a one-year term at or slightly less than 12%, or purchasing a note with a longer term at a higher interest rate.  Providence Financial and Providence Fund allow investors to elect to receive monthly or quarterly cash interest payments or take a one-time payment of interest, at a higher rate, upon maturity.

21.     Providence Financial and Providence Fund purport to use the proceeds of those notes to generate profits via investment in receivables transactions –a practice they refer to as "factoring" – made through certain affiliated companies in Brazil.  At least 400 U.S. investors currently hold at least $64 million in notes issued by Providence Financial and Providence Fund.

22.     The notes issued by Providence Financial and Providence Fund are securities, as that term is defined in the federal securities laws.

23.     No registration statement has been filed with the SEC concerning the notes sold by Providence Financial or Providence Fund to investors in the United States.

24.     Providence Financial and Providence Fund have offered and sold the unregistered notes through a network of unregistered brokers, including Defendants Churchfield and Jarrell.

25.     Churchfield, Jarrell, and other unregistered brokers have offered and sold Providence Financial and Providence Fund notes pursuant to agreements with a related Providence Group company that pay the brokers an annual commission in the amount of 6% of the face value of each note sold.

26.     Jarrell began selling the promissory notes in March 2012, and has offered and sold the notes to investors with whom Jarrell had an investment advisory agreement in place.

27.     In 2015, Providence Financial and Providence Fund paid Jarrell approximately $260,000 in commissions on the sale of the promissory notes.  In addition, Providence Financial and Providence Fund have paid for half of Jarrell's office rent since

Jarrell began selling the promissory notes to his clients.  Jarrell did not disclose this

compensation to any of the investors to whom he sold Providence notes, including the

individuals with whom he had advisory agreements in place.

28.     Churchfield began offering and selling Providence Fund and Providence

Financial promissory notes in 2013.  At Providence Financial's and Providence Fund's

direction, Jarrell provided guidance, training, and assistance to Churchfield on how to

offer and sell the promissory notes.  In addition to the 6% commission paid to

Churchfield, Providence Fund and Providence Financial paid Jarrell a 3% annual

"override" commission on the face value of notes sold by Churchfield.  Accordingly, 9%

of the proceeds of the investments sold by Churchfield would be devoted, annually, to

commissions for Churchfield and Jarrell.

29.     In 2015, Providence Financial and Providence Fund paid Churchfield

approximately $130,000 in commissions on the sale of the promissory notes, which

represented Churchfield's sole source of income for that year.  In addition, Providence

Financial and Providence Fund have paid for all of Churchfield's office rent since he

began offering the promissory notes.

30.     Jarrell and Churchfield identified potential investors for the promissory

notes by, among other things, holding "social security seminars."  In the course of selling

notes to investors, both Jarrell and Churchfield explained the investment to potential

investors using documents provided to them by Providence Financial and Providence

Fund.  They met with and answered questions from investors and potential investors,

accepted application materials, forwarded signed applications and promissory notes to

Providence Financial and Providence Fund, and transferred investor funds to and from Providence Financial and Providence Fund.

31.     Providence Financial and Providence Fund offered higher interest rates to noteholders that did not take monthly or quarterly interest payments in cash, but instead allowed interest to accrue until their notes matured.  The majority of investors chose not to take monthly or quarterly cash interest payments, but instead opted to allow interest to accrue until the notes reached maturity.

32.     When their notes matured, many investors did not take repayment of their principal and payment of accrued interest in cash.  Instead, they "renewed" their notes by transferring the principal and any accrued interest on their mature notes into new notes. Both Jarrell and Churchfield walked their clients through the note renewal process, collecting client signatures on new notes and other documents and forwarding those documents to Providence Financial and Providence Fund.

33.     At some point in 2015, Providence Financial and Providence Fund began sending Jarrell and other unregistered brokers an "Accredited Applicant Questionnaire" along with other documents used in the note renewal process.  However, Jarrell never used this questionnaire with his clients.  Moreover, numerous promissory note investors were not "accredited" as that term is defined in the federal securities laws.

**II.     The Promissory Note Offering Materials Contain Material Misrepresentations and Omissions.**

34.     Providence Financial and Providence Fund gave investors only a limited amount of information about the notes or their purported factoring business in Brazil.

That information initially took the form of a Providence Fund "Executive Memorandum," which Providence Fund and Providence Financial provided to investors and the unregistered brokers who promoted the promissory notes.

35.     Providence Financial and Providence Fund later provided investors and brokers a document entitled "Providence Financial Investments Inc. High Yield Fixed Returns Information" (the "Information Memorandum").

36.     Providence Financial and Providence Fund additionally promoted, and continue to promote, the promissory notes on a public website:  www.provfinance.com.

37.     Neither the Executive Memorandum, the Information Memorandum, the website, nor any of the other materials that Providence Financial and Providence Fund provided to investors included financial statements or balance sheets related to Providence Financial, Providence Fund, or any of their affiliates.  Indeed, when requested by Churchfield to provide such information, Providence Financial and Providence Fund refused, telling Churchfield:  "we are not a public company and don't disclose this."

38.   The Executive Memorandum, the Information Memorandum, and the website provide a general description, and tout the profitability, of the receivables financing business that Providence Financial and Providence Fund purport to conduct in the Brazilian factoring market.  These offering materials describe factoring as a financial transaction whereby a business sells its accounts receivable to a third party (the factor) at a discount, and the factor obtains the rights associated with the receivables.  In theory, the factor makes money via the spread between the discounted purchase price of the

receivables and the supposedly larger amount the factor collects when the outstanding receivables are paid off.

39. The Executive Memorandum describes the promissory notes, and states that Providence Fund will pay noteholders 12% annual interest, with payments to be made monthly. The Executive Memorandum indicates that note proceeds will be used, solely, to finance receivables factoring in Brazil. The Executive Memorandum additionally describes the promissory notes as a "low to moderate risk" investment.

40. Similar to the Executive Memorandum, the Information Memorandum contains a general discussion of receivables financing and factoring in Brazil, but provides scant details about Providence Financial's or Providence Fund's operations or how those companies will use investor funds to engage in factoring transactions.

41. The Information Memorandum additionally states that one of Providence Financial's main philosophies is to: "Provide investment safety with real high yield returns." The Information Memorandum additionally represents, in a section titled "Charges": "There are no fixed charges to clients."

42. The website similarly states, in a section titled "Charges": "No fees or charges to our lenders [the promissory note holders]."

43. The Executive Memorandum, the Information Memorandum, and website each fail to disclose any use for the note proceeds other than investing in factoring transactions in Brazil. For instance, none of the offering materials provided to investors disclosed that Providence Financial and Providence Fund would pay 6% annual commissions on each promissory note sold. The offering materials additionally do not

disclose that, from 2011 to 2015, a small set of Providence Group executives have received nearly $9 million from Providence Group's U.S. entities.

44.     These offering materials also do not disclose information describing the current financial condition, the current assets and liabilities, or the ability to repay investors, of Providence Financial, Providence Fund, or their related entities.   Moreover, beyond general statements downplaying the risks of the investment, the offering materials contain little, if any, disclosures about the risks attendant to receivables factoring, generally, or the promissory notes, in particular.

## III.   Providence Financial and Providence Fund Face Serious Financial Problems.

45.     Contrary to their representation that the "sole" use of investor proceeds would be to fund Brazilian factoring transactions, Providence Financial and Providence Fund deployed at least 32% of investor proceeds on expenditures other than receivables factoring.

46.     One result of Providence Financial and Providence Fund expending large portions of investor proceeds for uses other than factoring is that they hold receivables investments that are significantly lower in value than their obligations to investors.  For example, at year-end 2014, Providence Financial and Providence Fund owed investors more than $52 million, yet their Brazilian affiliates held only $13 million in receivables assets.  For 2015, Providence Financial's and Providence Fund's obligations to U.S. investors had increased to $64 million, yet their receivables investments had dwindled to $10.6 million.

47.     Moreover, Providence Financial's and Providence Fund's Brazilian affiliates have faced difficulties collecting certain of their accounts receivable.

48.     Providence Financial's and Providence Fund's current financial situation appears extremely tenuous.  Based on the most current bank statements available, Providence Financial and Providence Fund hold less than $250,000, spread through 28 accounts.

49.     Compounding these problems, Brazil's currency has sharply devalued against the U.S. dollar, with a nearly 50% decline in 2015.  As a result, Providence Financial and Providence Fund cannot repatriate their Brazilian assets to repay the U.S. investors without suffering significant currency exchange losses.  Accordingly, the only way Providence Financial and Providence Fund are able to repay U.S. investors is through the proceeds of new investments.

50.     Nevertheless, Providence Financial and Providence Fund continue to offer the promissory notes to U.S. investors, and do so without disclosing any of the financial concerns described above.

**IV.     Buzaneli Controlled Providence Financial and Providence Fund**

51.     Buzaneli controlled all aspects of the day-to-day operations of Providence Financial and Providence Fund until those entities filed for bankruptcy.  Buzaneli signed consents on behalf of both Providence Financial and Providence Fund with respect to the agreed upon injunctive relief entered by the court at the outset of the litigation in this matter.

13

52.    Buzaneli ran the companies' purported factoring operations, including the companies' efforts to sell notes to fund those transactions; executed notes on behalf of Providence Financial and Providence Fund; recruited brokers such as Churchfield to sell notes; and controlled daily cash flow transactions.

53.    The Providence Financial website described Buzaneli as its CEO and as a "Co-Founder of the Providence Companies Group" and stated that Buzaneli "is the driving force behind the group's receivable financing activities."  Certain versions of the Executive Documents provided to investors also make the same claim – that Buzaneli "is the driving force behind the group's factoring activities."

54.    Defendant Jerrell testified that he was told that certain payments were late because "[Buzaneli] hasn't processed that yet."  Jerrell also testified that "Antonio gives the go ahead when to send payments for groupings like if it's bills or clients or, everything comes through Antonio.  So, even though [an employee of Providence] is the accounts payable, she can't pay things until Antonio tells her to pay."

55.    Buzaneli also had signatory authority with respect to Providence Financial's and Providence Fund's bank accounts; was listed as the contact point for further information on Providence Financial's Executive Memorandum; and executed the bulk of the notes purchased by investors in Providence Financial and Providence Fund.

56.    Buzaneli employed a scheme and engaged in a course of business by which he used Providence Financial and Providence Fund to raise money from investors who were told that their note proceeds would be used to generate enormous profits via low-risk investment in factoring transactions in Brazil.  But Buzaneli then used Providence

Financial and Providence Fund to divert significant amounts of investor proceeds to other entities in the Providence Group that appear to have been controlled by Buzaneli.

57.     When subpoenaed by the SEC for testimony, Buzaneli asserted his rights under the Fifth Amendment.

## COUNT I

### Violations of Sections 5(a) and 5(c) of the Securities Act
### [15 U.S.C. § 77e(a) and (c)]
(Against All Defendants except Buzaneli)

58.     Paragraphs 1 through 57 are alleged and incorporated by reference as though fully set forth herein.

59.     By engaging in the conduct described above, Defendants Providence Financial, Providence Fund, Jarrell, and Churchfield, directly or indirectly:  (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; and (iii) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

60.     By engaging in the conduct described above, Defendants Providence

Financial, Providence Fund, Jarrell, and Churchfield have violated Sections 5(a) and 5(c)

of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT II

### Violations of Section 15(a) of the Exchange Act
### [15 U.S.C. §78o(a)]
(Against Defendants Jarrell and Churchfield)

61.     Paragraphs 1 through 57 are alleged and incorporated by reference as

though fully set forth herein.

62.     By engaging in the conduct described above, Defendants Jarrell and

Churchfield engaged in the business of effecting transactions in, and induced and

attempted to induce the purchase or sale of, securities for the accounts of others without

being registered as or associated with a registered broker-dealer.

63.     By reason of the foregoing, Defendants Jarrell and Churchfield violated

Section 15(a) Exchange Act [15 U.S.C. §78o(a)].

## COUNT III

### Violations of Sections 206(1) and 206(2) of the Advisers Act
### [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]
(Against Defendant Jarrell)

64.     Paragraphs 1 through 57 are alleged and incorporated by reference as

though fully set forth herein.

65.     By engaging in the conduct described above, Defendant Jarrell knowingly

or recklessly employed a device, scheme or artifice to defraud a client or prospective

client.

66.     By engaging in the conduct described above, Defendant Jarrell engaged in a transaction, practice, or course of business that operated as a fraud or deceit upon a client.

67.     Jarrell acted with scienter.

68.     By reason of the foregoing, Defendant Jarrell violated Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## COUNT IV

### Violations of Section 17(a)(2) of the Securities Act
### [15 U.S.C. § 77q(a)(2)]
(Against Defendants Providence Financial and Providence Fund)

69.     Paragraphs 1 through 57 are alleged and incorporated by reference as though fully set forth herein.

70.     By engaging in the conduct described above, Defendants Providence Financial and Providence Fund, in the offer or sale of securities, by the use of any means or instruments of transportation and communication in interstate commerce and by the use of the mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

71.     By reason of the foregoing, Defendants Providence Financial and Providence Fund violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT V

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5(b)]
(Against Defendants Providence Financial and Providence Fund)

72.     Paragraphs 1 through 57 are alleged and incorporated by reference as though fully set forth herein.

73.     By engaging in the conduct described above, Defendants Providence Financial and Providence Fund, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or by the use of the mails, directly or indirectly, made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

74.     Defendants Providence Financial and Providence Fund acted with scienter.

75.     By reason of the foregoing, Defendants Providence Financial and Providence Fund violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

## COUNT VI
### Violations of Section 20(a) of the Exchange Act
### [15 U.S.C. § 78t(a)]
(Against Defendant Buzaneli)

76.     Paragraphs 1 through 57 are realleged and incorporated by reference as if set forth fully herein.

77.     Defendants Providence Financial and Providence Fund violated Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5(b) [17 C.F.R. §240.10b-5(b)] thereunder as described in Count V above, which is incorporated by reference as if set forth fully herein.

78.     As set forth in paragraphs 1 through 57 above, Buzaneli controlled the day-to-day affairs of Providence Financial and Providence Fund and possessed, directly or indirectly, the power to direct or cause the direction of the management and policies of Providence Financial and Providence Fund.

79.     Buzaneli directly or indirectly controlled Providence Financial and Providence Fund within the meaning of Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)].

80.     Buzaneli knowingly or recklessly, directly or indirectly, induced acts constituting violations of Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5(b) [17 C.F.R. §240.10b-5(b)] thereunder.

81.     Buzaneli is liable as a control person for the violations by for the violations of Providence Financial and Providence Fund of Section 10(b) of the Exchange Act [15 U.S.C. §§78j(b)] and Rule 10b-5(b) [17 C.F.R. §240.10b-5(b)] thereunder.

82.     Pursuant to Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)], Buzaneli is liable jointly and severally with and to the same extent as Providence Financial and Providence Fund.

## COUNT VII
### Aiding and Abetting Violations of Section 5(a) and (c) of the Securities Act
(Against Buzaneli)

83.     Paragraphs 1 through 57 are realleged and incorporated by reference.

84.     By engaging in the conduct described above, Defendants Providence Financial and Providence Fund, directly or indirectly:  (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails to

sell, through the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration statement was in effect; and (iii) made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium of a prospectus or otherwise, securities as to which no registration statement had been filed.

85.      By engaging in the conduct described above, Defendants Providence Financial and Providence Fund violated Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

86.      Buzaneli controlled Providence Financial and Providence Fund and was generally aware of all of their activities.

87.      Buzaneli knowingly provided substantial assistance to Providence Financial and Providence Fund as summarized above.

88.      By reason of the foregoing, Buzaneli aided and abetted Providence Financial's and Providence Fund's violations of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## COUNT VIII
### Aiding and Abetting Violations of Section 17(a)2 of the Securities Act
(Against Buzaneli)

89.      Paragraphs 1 through 57 are alleged and incorporated by reference as though fully set forth herein.

90.     By engaging in the conduct described above, Defendants Providence Financial and Providence Fund, in the offer or sale of securities, by the use of any means or instruments of transportation and communication in interstate commerce and by the use of the mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

91.     By reason of the foregoing, Defendants Providence Financial and Providence Fund violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

92.     Buzaneli controlled Providence Financial and Providence Fund and was generally aware of all of their activities.

93.     Buzaneli knowingly provided substantial assistance to Providence Financial and Providence Fund as summarized above.

94.     By reason of the foregoing, Buzaneli aided and abetted Providence Financial's and Providence Fund's violations of Section 17(b) of the Securities Act. [15 U.S.C. § 77q(a)(2)].

## COUNT IX
### Aiding and Abetting Violations of Section 10(b)
### of the Securities Exchange Act and Rule 10b-5(b) Thereunder
(Against Buzaneli)

95.     Paragraphs 1 through 57 are alleged and incorporated by reference as though fully set forth herein.

96.     By engaging in the conduct described above, Defendant Buzaneli, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or by the use of the mails, directly or indirectly, made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

97.     Defendants Providence Financial and Providence Fund acted with scienter.

98.     By reason of the foregoing, Defendants Providence Financial and Providence Fund violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

99.     Buzaneli controlled Providence Financial and Providence Fund and was generally aware of all of their activities.

100.    Buzaneli knowingly provided substantial assistance to Providence Financial and Providence Fund as summarized above.

101.    By reason of the foregoing, Buzaneli aided and abetted Providence Financial's and Providence Fund's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

### COUNT X
### Violations of Sections 17(a)(1) and (3) of the Securities Act
### [15 U.S.C. §77q(a)(1) and(3)]
(Against Defendant Buzaneli)

102.    Paragraphs 1 through 57 are alleged and incorporated by reference as though fully set forth herein.

103.    By engaging in the conduct described above, Defendant Buzaneli, in the offer or sale of securities, by the use of any means or instruments of transportation and communication in interstate commerce and by the use of the mails, directly or indirectly, employed a device, scheme or artifice to defraud or engaged in a transaction, practice or course of business which operated or would operate as a fraud or deceit upon the purchaser of securities.

104.    Buzaneli acted with scienter.

105.    By reason of the foregoing, Defendant Buzaneli violated Sections17(a)(1) and (3) of the Securities Act [15 U.S.C. §77q(a)(1) and (3)].

## COUNT XI

**Violations of Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c)
Thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. §240.10b-5(a) and(c)]**
(Against Defendant Buzaneli)

106.    Paragraphs 1 through 57 are alleged and incorporated by reference as though fully set forth herein

107.    By engaging in the conduct described above, Defendant Buzaneli, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or by the use of the mails, directly or indirectly, employed a device, scheme, or artifice to defraud or engaged in an act, practice or course of business which operated or would operate as a fraud or deceit upon any person.

108.    Defendant Buzaneli acted with scienter.

109.    By reason of the foregoing, Defendant Buzaneli violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and (c) thereunder [17 C.F.R. §§ 240.10b-5(a) and (c)].

## RELIEF REQUESTED

WHEREFORE, the SEC respectfully requests that this Court:

### I.

Find that Defendants committed the violations charged in this complaint.

### II.

Enter orders of permanent injunction as to Defendants, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, enjoining Defendants, and their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices, or courses of business described above, or in conduct of similar purport and object, that violate, or aid and abet violations of, the provisions of law and rules alleged in this complaint.

### III.

Enter an order requiring Defendants to disgorge any and all ill-gotten gains, plus prejudgment interest, that they obtained as a result of the violations of law charged in this complaint.

### IV.

Enter an order imposing upon Defendants appropriate civil penalties.

## V.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that are entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VI.

Grant such other and further relief as this Court deems appropriate and necessary.

*     *     *

## JURY DEMAND

The SEC demands a trial by jury.

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION**


s/ Charles J. Kerstetter
Benjamin J. Hanauer (IL No. 6280156)
hanauerb@sec.gov
Charles J. Kerstetter (PA No. 67088)
kerstetterc@sec.gov
Andrew P. O'Brien (IL No. 6280729)
obriena@sec.gov
**UNITED STATES SECURITIES
    AND EXCHANGE COMMISSION**
175 West Jackson Boulevard, Suite 900
Chicago, Illinois 60604
Telephone:  (312) 353-7390
Facsimile:  (312) 353-7398

James Alexander (MN No. 166145)
Assistant United States Attorney
District of Minnesota
600 U.S. Courthouse
300 South Fourth Street

Minneapolis, MN 55415
Telephone: (612) 664-5600
Jim.Alexander@usdoj.gov
Local Counsel

Dated:  August 25, 2016